[Cite as *State v. Conrad*, 2026-Ohio-2768.]

**IN THE COURT OF APPEALS OF OHIO**
**ELEVENTH APPELLATE DISTRICT**
**LAKE COUNTY**

STATE OF OHIO,
CITY OF WILLOUGHBY,

        Plaintiff-Appellee,

    - vs -

JASON JOHN RICHARD CONRAD,

        Defendant-Appellant.

CASE NO. 2025-L-127

Criminal Appeal from the
Willoughby Municipal Court

Trial Court No. 2025 CRB 00637

---

**OPINION AND JUDGMENT ENTRY**

Decided: July 20, 2026
Judgment: Reversed and remanded

---

*Michael Kenny*, City of Wickliffe Prosecutor, and *Eric R. Fink*, 11 South River Street, Kent, OH 44240 (For Plaintiff-Appellee).

*Joseph R. Klammer*, The Klammer Law Office, Ltd., The Historic Mentor Center Street School, 7482 Center Street, Unit 6, Mentor, OH 44060 (For Defendant-Appellant.)

EUGENE A. LUCCI, J.

{¶1} Appellant, Jason John Richard Conrad, appeals the judgment of the Willoughby Municipal Court imposing sentence following a jury trial wherein he was found guilty of obstructing official business in violation of R.C. 2921.31(A). For the reasons that follow, Conrad's third assignment of error has merit, and we reverse the judgment of conviction, and remand the matter for a new trial. Conrad's first assignment of error lacks merit to the limited extent set forth herein, and the second assignment of error is rendered moot.

## I. Factual and Procedural Background

{¶2}  In 2025, Conrad was living with his girlfriend and their ten-month-old son in Conrad's home in Wickliffe, Ohio. In April 2025, Conrad and his girlfriend were involved in a verbal altercation. After the girlfriend allegedly damaged Conrad's PlayStation console in the basement, Conrad called 911. He informed the dispatcher that he would be armed "because the cops are coming in here." The dispatcher responded, "Do not pick it up with your hands, okay?" Conrad stated, "Absolutely." After ending the 911 call, Conrad armed himself by holstering a handgun on his right hip and then went upstairs to await law enforcement.

{¶3}  When the first officer arrived, Conrad observed him approaching the front door on foot, at which point Conrad opened the door for the officer and informed him that he was armed. The officer responded by stating "pardon me" or "excuse me," and Conrad responded again that he was armed. The officer saw the firearm on Conrad's hip and informed him that he was going to relieve him of the gun. Conrad initially refused, stating, "No you're not," and he changed his stance by turning his right hip away from the officer. Conrad then motioned to or placed his hand on his gun, at which point the officer drew his own firearm. After loudly arguing as to whether Conrad was permitted to be armed, Conrad raised his hands and told the officer to take his gun. Approximately 23 seconds elapsed between the officer entering the home and the officer disarming Conrad.

{¶4}  After disarming Conrad, the officer spoke with him for several minutes regarding his decision to arm himself. During this conversation, Conrad indicated he had armed himself because he believed men were typically arrested when police were called for domestic matters, and he wanted to "eve[n] the playing field" because he was unsure

Case No. 2025-L-127

how officers would respond and did not trust them. After speaking with Conrad, the first responding officer joined other officers who had arrived and were speaking to Conrad's girlfriend in the basement. The girlfriend indicated that Conrad had pushed her, and she fell back, bumping her hip against a table, during their dispute.

{¶5} Thereafter, Conrad was charged with domestic violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A); and obstructing official business, a second-degree misdemeanor, in violation of R.C. 2921.31(A). Following a jury trial, the jury rendered a not-guilty verdict on the domestic violence charge and a guilty verdict on the obstructing official business charge.

{¶6} On October 6, 2025, the trial court issued a judgment entry sentencing Conrad to 90 days of confinement, with the entirety of the sentence suspended, placing Conrad on community control for twenty-four months with certain conditions, and fining Conrad $500.00. Conrad timely appealed.

## II. Assignments of Error

{¶7} Conrad raises three assignments of error:

[1.] The trial court erred in denying appellant's motion for a judgment of acquittal pursuant to Crim.R. 29(A).

[2.] The verdict is against the manifest weight of the evidence.

[3.] The trial court erred in failing to instruct the jury on defendant's privilege to possess his firearm as contemplated by R.C. 2921.31.

{¶8} Because our disposition of the third assignment of error requires reversal and remand for a new trial, we address it first. We then address the first assignment of error to the limited extent necessary to determine whether retrial is permissible under the

Case No. 2025-L-127

Double Jeopardy Clause. Our disposition of the third assignment of error renders the second assignment of error moot.

### III. Third Assignment of Error

{¶9}   In his third assignment of error, Conrad contends the trial court erred in failing to instruct the jury that the Second Amendment to the United States Constitution, Article I, Section 4 of the Ohio Constitution, and R.C. 2923.12(C)(1)(d) each independently supplied a "privilege" within the meaning of R.C. 2921.31(A). We agree.

{¶10} "Requested jury instructions should be given if they are (1) correct statements of the applicable law, (2) relevant to the facts of the case, and (3) not included in the general charge to the jury." *State v. Kessler Scott*, 2022-Ohio-4054, ¶ 43 (11th Dist.), citing *State v. McEndree*, 2020-Ohio-4526, ¶ 63 (11th Dist.) (Abrogated on other grounds.). "This court generally reviews jury instructions under an abuse of discretion standard so long as the instruction is a correct statement of law." *Kessler Scott* at ¶ 44. Whether an instruction correctly states the law, however, is reviewed de novo. *Id.* at ¶ 44.

{¶11} More fundamentally, the Ohio Supreme Court has long held that "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, at paragraph two of the syllabus. A material omission from the jury charge—the failure to state the law on a relevant and necessary point—is itself error. *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). The duty of completeness extends not merely to abstract restatements of the statute under which the defendant is charged, but to the law applicable to the defenses raised and supported by the evidence. *Comen* at paragraph two of the syllabus.

{¶12} Here, Conrad was convicted of violating R.C. 2921.31(A), which provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶13} This Court has identified the essential elements of obstructing official business as: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so." *Girard v. Oakman*, 2018-Ohio-1212, ¶ 36 (11th Dist.), quoting *State v. Brickner-Latham*, 2006-Ohio-609, ¶ 25 (3d Dist.); *accord Smith v. City of Wyoming*, 821 F.3d 697, 715-16 (6th Cir. 2016).[1]

{¶14} The "without privilege" element is not a formality. It is a substantive element of the offense, and the State bears the burden of proving its absence beyond a reasonable doubt. *See State v. Bradley*, 2024-Ohio-5225, ¶ 77 (7th Dist.); *State v. Body*, 2018-Ohio-

---

1. *Smith* is also instructive on what "act" is needed to satisfy the first element: "Ohio courts have emphasized the importance of the first element, the requirement that the defendant commit an affirmative act. 'A violation of [§ 2921.31] requires an affirmative act. A person cannot be guilty of obstructing official business by doing nothing or failing to act.' *State v. Wellman*, [2007-Ohio-2953, ¶ 13 (1st Dist.)] (holding that the defendant acted when he 'went beyond asking the officers questions and refusing to give his identification,' and 'actively prevented them from talking to [another] individual . . . by being belligerent and argumentative'); *accord Patrizi* [*v. Huff*, 690 F.3d 459, 464-66 (6th Cir.)]. Probable cause could not have been based on Smith's words. Ohio courts have not treated speech alone as an act for purposes of the statute. *See Patrizi*, 690 F.3d at 464 ('To date, Ohio courts have affirmed obstruction convictions premised on true speech only when that speech involved yelling, cursing, aggressive conduct, and/or persistent disruptions after warnings from the police against interrupting the investigation.'). Hence, the only relevant affirmative act was Smith withdrawing her hand when Officer Murphy grabbed it. Drawing all reasonable inferences in Smith's favor, this withdrawal may have been simply an involuntary reaction to an unexpected touch. And, giving Smith the benefit of the doubt, she had no intention of obstructing the officers in their duties. Nor did she delay them for more than a few seconds. After pulling her hand away, she walked downstairs as directed and did not resist being handcuffed. In sum, on the facts as Smith relates them, her conduct did not provide probable cause to arrest her for obstructing official business in violation of Ohio law. Hence, the officers arrested her in violation of the Fourth Amendment." *Smith v. City of Wyoming*, 821 F.3d 697, 715-16 (6th Cir. 2016), *as amended* (May 18, 2016).

Case No. 2025-L-127

3395, ¶ 20 (2d Dist.). *But see State v. Gordon*, 9 Ohio App.3d 184, 187 (1st Dist. 1983) (holding that "the absence of privilege is not an essential element of obstructing official business that the state must prove beyond a reasonable doubt"). To the extent *Gordon's* element-versus-defense holding conflicts with this Court's adoption of the five-element framework in *Oakman*, we follow our own precedent.

{¶15} At trial, defense counsel proffered a privilege instruction identifying the Second Amendment, Article I, Section 4 of the Ohio Constitution, and R.C. 9.68 as sources of the privilege contemplated by R.C. 2921.31(A). The trial court declined to provide an instruction identifying these sources of privileges to possess a firearm. During discussion with counsel regarding the instructions, the following exchange occurred:

> [DEFENSE COUNSEL]: Yeah, so I think, your Honor, I think we are in a tough spot where I think the jury needs to be instructed that he had a right to have this firearm by way of law or [S]econd [A]mendment, otherwise they are left to guess whether he had the right to have this firearm. And although he has been charged with it, I have not seen that the police officer has the right to instruct him to remove his firearm in 2025 in Ohio when he invited him into his home. So I think the jury is going to be left wondering, and they will need some type of instruction as to whether 9.68, the disability prohibitions, or the second amendment in and of itself gives him the right or the privilege to have this firearm in his own home.
>
> THE COURT: I think that is the question involved here. He was told he was going to be disarmed and that becomes a question. No one is disputing that he has the right to possess a firearm in his own home.

{¶16} Thereafter, defense counsel specifically asked the court to include an instruction that the Second Amendment and R.C. 9.68 are sources of privilege. The State indicated that such an instruction would "muddy the waters . . . ." After additional discussion of privilege and cases cited by defense counsel, the trial court asked defense

Case No. 2025-L-127

counsel to specify the instruction that he was requesting. Defense counsel informed the court that he would be "drafting one tonight." The court informed counsel, "You and [the prosecutor] can have that discussion then and if there is something that has been agreed upon, then you can let me know. Or if it's drafted and not agreed upon, then we can have that discussion in the morning as well."

{¶17} The next morning, defense counsel proposed the following instruction: "A police officer may disarm a citizen, where the police office [sic.] has evidence of Defendant's criminality or dangerousness." The trial court denied counsel's request for this instruction, concluding that the instruction was based on nonbinding caselaw relative to consensual encounters, which it determined was distinguishable from the present case. The trial court declined to give any instruction identifying constitutional or statutory sources of privilege beyond the standard Ohio Jury Instructions definition that tracks R.C. 2901.01(A)(12)—that "privilege" means "any immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." Because the error was preserved by timely objection, it is reviewed for harmless error under Crim.R. 52(A). Crim.R. 30(A); *State v. Williford*, 49 Ohio St.3d 247, 251-52 (1990).

{¶18} R.C. 2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." However, "privilege" is not the equivalent of *any* lawful conduct. *State v. Stayton*, 126 Ohio App.3d 158, 163 (1st Dist. 1998). Instead, privilege "'refers to a positive grant of authority entitling one to deliberately obstruct or interfere with a police officer performing his lawful duty.'" *Gordon,* 9 Ohio

App.3d at 185, quoting *Stayton* at ¶ 163; *accord Body*, 2018-Ohio-3395, at ¶ 29. "For example, . . . once [an individual is] arrested, [he or she] ha[s] a legitimate constitutional privilege under the Fifth and Sixth Amendments to impede any further police investigation by remaining silent and insisting upon the presence of counsel before any interrogation t[akes] place." *Stayton* at 163.

{¶19} Two Ohio appellate decisions confirm that constitutional rights are themselves sources of privilege within the meaning of the obstruction statute. In *State v. Robinson*, 103 Ohio App.3d 490 (1st Dist. 1995), the First District discussed a defendant's refusal to consent to a warrantless entry into his home. The court stated: "privilege is a defense to a charge of obstructing official business, and an obstruction charge requires proof that the official be obstructed 'in the performance of his lawful duties.' . . . [T]he Fourth Amendment confers the right to refuse consent to enter. The assertion of that right cannot be a crime." (Citation omitted.) *Id.* at 496. *Robinson* applies the relevant frame: a constitutional right of refusal cannot be repurposed as the actus reus of an obstruction prosecution, because the official whose order is refused is not, in that circumstance, performing a "lawful duty," and the privilege element of the offense is satisfied by the defendant's exercise of the constitutional right.

{¶20} The Tenth District applied the same principle in *State v. Dickman*, 2015-Ohio-1915 (10th Dist.). The court held that "[a] predicate for the crime of obstruction of official business is that the official business be an 'authorized act.' R.C. 2921.31(A)." *Id.* at ¶ 15. Where the underlying official act exceeds the officer's lawful authority, the court held, the "assertion of [constitutional] rights was not a basis to suspect that he had committed a crime." *Id.* at ¶ 15. *Dickman* thus articulates the converse of *Robinson*: where

Case No. 2025-L-127

the officer's command is itself unauthorized, the defendant's assertion of constitutional rights cannot supply the basis for criminal liability under R.C. 2921.31(A). *Robinson* and *Dickman* together stand for the proposition that the "without privilege" and "lawful duties" elements of R.C. 2921.31(A) are interlocking and constitutionally significant.

{¶21} Statutory grants, where they confer an express right or exemption, qualify as sources of privilege with equal force. *Gordon*, 9 Ohio App.3d at 186 (privilege "bestowed by express or implied grant").

{¶22} Here, defense counsel identified three sources of privilege to possess a firearm in his proffer. We address each in turn.

{¶23} ***The Second Amendment.*** The Second Amendment to the United States Constitution provides that "the right of the people to keep and bear Arms, shall not be infringed." Since *District of Columbia v. Heller*, 554 U.S. 570 (2008), it has been settled that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. *McDonald v. City of Chicago*, 561 U.S. 742 (2010), made that guarantee applicable to the states through the Fourteenth Amendment. The Court's subsequent decisions in *New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), refined the analytical framework—replacing "means-end scrutiny" with "text-history-tradition" analysis—but did not narrow the core right *Heller* recognized. *Bruen* held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government bears the burden of justifying any regulation by reference to "the Nation's historical tradition of firearm regulation." *Bruen* at 17. *Rahimi* applied that framework to uphold 18 U.S.C. 922(g)(8) on

Case No. 2025-L-127

the basis of historical analogues—surety laws and "going-armed" laws—that required quasi-judicial determinations of dangerousness before disarmament. *Rahimi* at 695-700.

{¶24} Conrad is a non-disqualified person. He has no felony record, no protective order against him, and no disability under R.C. 2923.13. His possession of a holstered handgun in his own home for self-defense is conduct that sits at the very core of the right *Heller* identified. The Second Amendment, as construed by the Supreme Court in *Heller*, *McDonald*, *Bruen*, and *Rahimi*, "confers" upon him—to use *Robinson's* phrase—the right to that possession. *See Robinson*, 103 Ohio App.3d at 496.

{¶25} ***Article I, Section 4 of the Ohio Constitution.*** The Ohio Constitution provides: "The people have the right to bear arms for their defense and security . . . ." Ohio Const., art. I, § 4. Ohio courts have interpreted Article I, Section 4 in parallel with the Second Amendment under the *Bruen* framework. *See State v. King*, 2024-Ohio-4585, ¶ 39 (8th Dist.). Ohio's constitutional guarantee is no less protective than its federal counterpart in the in-home context.

{¶26} ***R.C. 2923.12(C)(1)(d).*** Ohio law expressly exempts from the concealed-carry prohibition "[a] person's . . . storage or possession of a firearm . . . in the actor's own home for any lawful purpose." R.C. 2923.12(C)(1)(d). This is an express statutory grant of authority to possess a firearm in one's own home, which falls squarely within the definition of privilege as provided in R.C. 2901.01(A)(12).

{¶27} The General Assembly has further declared in R.C. 9.68(A) that "[t]he individual right to keep and bear arms" is "a fundamental individual right that predates the United States Constitution and Ohio Constitution, and . . . a constitutionally protected right in every part of Ohio. . . ." While R.C. 9.68 is principally directed at preempting conflicting

Case No. 2025-L-127

local ordinances, *Cleveland v. State*, 2010-Ohio-6318, it confirms the legislative judgment that the right is "fundamental" and "constitutionally protected"—language that bears directly on whether the corresponding statutory exemption qualifies as "privilege" under R.C. 2921.31(A).

{¶28} Each of the three sources Conrad identified—the Second Amendment, Article I, Section 4, and R.C. 2923.12(C)(1)(d)—qualifies as a source of "privilege" to possess a firearm within the meaning of R.C. 2921.31(A) under the statutory definition. *See* R.C. 2901.01(A)(12). The requested instruction was therefore a correct statement of the law. *Kessler Scott*, 2022-Ohio-4054, at ¶ 43 (11th Dist.).

{¶29} Although the State acknowledged at trial that Conrad had a right to possess a firearm in his home, it maintained that this right is conditional and a police officer may disarm him under the circumstances of this case. The State, which bore the burden of proof that Conrad had no privilege to resist seizure of the firearm, proposed no instruction to this effect, and, as set forth above, Conrad's proposed instruction was rejected.

{¶30} The Fourth Amendment protects "the people" from "unreasonable searches and seizures." U.S. Const. amend. IV. To justify a temporary seizure of a firearm for officer safety during an encounter, the "officer must have a 'specific and articulable' belief based on the 'reasonably prudent [person]' standard that an individual is armed and dangerous.'" *State v. Lozada*, 92 Ohio St.3d 74, 75 (2001), quoting *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968). *See also Northrup v. City of Toledo Police Dept.*, 785 F.3d 1128, 1131 (6th Cir. 2015).

{¶31} However, the trial court gave only the OJI definition tracking R.C. 2901.01(A)(12)—that "privilege" is any "immunity, license, or right conferred by law" or

"bestowed by express or implied grant." That instruction states the generic statutory definition of privilege. The jury heard what privilege means in the abstract. A jury cannot be expected to determine, as a matter of legal interpretation untaught, whether a constitutional right is "conferred by law" within the OJI sense or whether an Ohio statutory exemption qualifies as a "right bestowed by express grant." Moreover, a jury cannot be expected to determine when such a right yields to a seizure by law enforcement— whether such a seizure exceeds the officer's lawful duties. Those are questions of law for the trial court to resolve through proper instruction, not questions of legal exegesis for the jury to undertake without guidance. *Comen*, 50 Ohio St.3d 206, at paragraph two of the syllabus.

{¶32} The State argues that the OJI definition, being abstractly correct, was legally adequate. We disagree. *Comen* requires the trial court to give "all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *Id.* The generic OJI definition is the genus; the specific constitutional and statutory sources of privilege Conrad invoked are the species. A jury instruction that gives the genus without the species, on a record where the species is the entirety of the defense, is incomplete. *Adams*, 62 Ohio St.2d 151, at paragraph three of the syllabus. The omission of "all instructions which are relevant and necessary for the jury to weigh the evidence," *Comen* at paragraph two of the syllabus, is itself error—regardless of whether what the trial court did say was, taken in isolation, a correct statement of generic law.

{¶33} The trial court therefore erred in refusing to give the requested instruction. *Kessler Scott* at ¶ 43-44.

Case No. 2025-L-127

{¶34} We turn to whether the error was harmless. Because the error was preserved by timely objection, Crim.R. 30(A), it is reviewed for harmless error under Crim.R. 52(A). The State bears the burden of demonstrating that the error did not affect Conrad's substantial rights. *Williford*, 49 Ohio St.3d at 251; *Adams* at paragraph three of the syllabus.

{¶35} The State cannot meet that burden on this record. The privilege defense was Conrad's only meaningful defense to the obstruction charge. The State's theory of obstruction was, at all times, that Conrad refused to relinquish a firearm—a firearm that he was lawfully entitled, as a non-disqualified person in his own home, to possess. The jury was instructed on what privilege means in the abstract; it was given no legal framework for considering whether the Second Amendment, Article I, Section 4, or R.C. 2923.12(C)(1)(d) supplied a privilege under the facts of this case or the circumstances under which such a privilege yields to the lawful duties of law enforcement. Withholding the legal framework for the dispositive defense is not harmless.

{¶36} A properly instructed jury—told that the Second Amendment, Article I, Section 4, and R.C. 2923.12(C)(1)(d) each independently confer a right to possess a firearm in one's own home—would have had a legally supported path to a finding that the State failed to prove the "without privilege" element beyond a reasonable doubt. The jury was deprived of that path, and the conviction cannot stand.

{¶37} We emphasize the limited scope of our holding. We hold only that, on the record before us—where Conrad is a non-disqualified person under R.C. 2923.13, was inside his own residence at all relevant times, and possessed a holstered firearm during a 911-initiated police encounter—the constitutional and statutory sources of privilege he

Case No. 2025-L-127

identified entitle him to a specific instruction on those sources. The privilege we recognize today is a privilege of possession subject to lawful disarming. Nothing in this opinion should be read as conferring any right to physically resist a lawful police order or to draw or brandish a firearm in the presence of an officer, or to use a firearm in a manner that itself constitutes a separate offense. The constitutional right to keep a firearm in one's home for self-defense, recognized in *Heller*, 554 U.S. at 635, and the statutory exemption in R.C. 2923.12(C)(1)(d), confer a right to *have* the firearm.

{¶38} We add one further clarification, because the trial record may otherwise invite confusion on remand. An officer's knowledge at the moment of the order to disarm bears on the lawfulness of that order under the Fourth Amendment. The record reflects that Conrad's explanation of his reasons for arming himself—that he wished to "eve[n] the playing field" with the responding officers—was given to the officer only after the disarming was complete, in a post-disarming conversation, and was offered again at trial. That sequence is significant, as the explanation cannot retroactively supply the articulable basis for the order; under *Terry*, 392 U.S. at 21-22, the constitutional sufficiency of an investigative seizure is judged by the facts known to the officer at the moment of the seizure. On remand, the jury must be instructed on the privilege framework with sufficient particularity to perform its factfinding role.

{¶39} Our holding is narrow. We do not hold that the Second Amendment, Article I, Section 4, or R.C. 2923.12(C)(1)(d) confers any right to physically resist a lawful police order, nor do we resolve whether the officer's seizure of the firearm in this case was itself a lawful exercise of authority. We hold only that, where the State's prosecution under R.C. 2921.31(A) places the "without privilege" element squarely at issue, and where the

Case No. 2025-L-127

defendant has identified specific constitutional and statutory sources of privilege supported by the evidence, the trial court must instruct the jury on those specific sources, and, where the facts suggest that the privilege yielded to seizure by a police officer, the trial court must also instruct the jury as to the standard applicable to determine the lawfulness of the seizure. The generic OJI definition is necessary but not sufficient. *Comen*, 50 Ohio St.3d 206, at paragraph two of the syllabus.

{¶40} Conrad's third assignment of error has merit.

## IV. First Assignment of Error

{¶41} In his first assignment of error, Conrad contends the trial court erred in denying his Crim.R. 29(A) motion for judgment of acquittal because the evidence was insufficient to sustain a conviction for obstructing official business under R.C. 2921.31(A). Although our disposition of the third assignment of error requires reversal and remand for a new trial, we must address the sufficiency challenge because a reversal on sufficiency grounds would bar retrial under the Double Jeopardy Clause. *Burks v. United States*, 437 U.S. 1, 18 (1978); *Tibbs v. Florida*, 457 U.S. 31, 41-42 (1982); *State v. Brewer*, 2009-Ohio-593, ¶ 15. We accordingly address the first assignment of error to the limited extent necessary to determine whether retrial is permissible.

{¶42} The standard for reviewing the denial of a Crim.R. 29(A) motion is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979); *see also State v. Thompkins*, 1997-Ohio-52, ¶

23. Sufficiency is a question of law; the reviewing court does not weigh evidence or assess credibility. *Thompkins*.

{¶43} Viewing the evidence in the light most favorable to the State, the record contains testimony that, the officer was first to respond to the domestic dispute. Upon entering Conrad's home, he informed Conrad that he was going to relieve him of his holstered firearm. Conrad verbally refused, turned his armed hip away from the officer, and placed his hand on the holstered firearm; that the officer drew his sidearm in response and testified he was "rattled" and nearly discharged his weapon; that the standoff persisted for approximately twenty-three seconds before Conrad complied; and that the officer thereafter spent additional time deescalating the encounter by ascertaining why Conrad had armed himself. Viewed in a light most favorable to the State, a rational trier of fact, could have found each essential element of R.C. 2921.31(A), as set forth in our discussion of the third assigned error, proven beyond a reasonable doubt.

{¶44} We hold only that the evidence at the first trial was legally sufficient to permit a rational juror to convict; we do not hold that conviction was required, nor do we resolve the question—properly preserved for retrial—whether the officer's order itself constituted the performance of a "lawful duty" within the meaning of R.C. 2921.31(A).

{¶45} Because the evidence was sufficient to support the conviction, retrial on remand is not barred by the Double Jeopardy Clause. *Brewer*, 2009-Ohio-593, at ¶ 16.

{¶46} Conrad's first assignment of error lacks merit to the limited extent set forth above.

Case No. 2025-L-127

## V. Second Assignment of Error

{¶47}  In his second assignment of error, Conrad contends the verdict was against the manifest weight of the evidence. Because we sustain Conrad's third assignment of error and reverse the conviction for instructional error, the second assignment of error—addressed to the weight of the evidence at the first trial—is rendered moot. App.R. 12(A)(1)(c).

{¶48}  Conrad's second assignment of error is therefore moot, and we decline to address it.

## VI. Disposition

{¶49}  For the foregoing reasons, the judgment of the Willoughby Municipal Court is reversed, and this matter is remanded for further proceedings consistent with this opinion.


MATT LYNCH, P.J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-L-127

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's third assignment of error has merit, appellant's first assignment of error is without merit, and appellant's second assignment of error is moot. It is the judgment and order of this court that the judgment of the Willoughby Municipal Court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Costs to be taxed against the parties equally.

_____
JUDGE EUGENE A. LUCCI

_____
PRESIDING JUDGE MATT LYNCH,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-127